# SUPREME COURT.

MYNDERT VAN SCHAICK, respondent agt. THE THIRD AVENUE RAILROAD COMPANY, appellants.

Where an individual *lessee* took a lease of premises in his own name for the benefit of and in trust for an unincorporated association, *and such company as might be thereafter formed to succeed them in their said business,* and the association, under an agreement with the lessee, assumed for themselves and the said company *all the covenants in the lease, and agreed to perform them;* and subsequently the company became incorporated (not entirely of the same members) and took a general assignment from the association of all their property, and subsequently an assignment from the lessee of the lease in question; and thereafter for several years occupied and paid the rent and all assessments upon the premises thus leased, when the *corporation sold and assigned* the lease and all their interest in and to the premises leased, to a third person:

*Held,* that the *liability* of the corporation for rent *ceased at law, when they assigned the lease and terminated their occupation.* Nor could they be held in *equity* as *cestui que trusts.*

The act of receiving an assignment of the lease subject to rents, &c., by the corporation, devolved no extraordinary or equitable liability on them, in the absence of any act on their part that could be deemed equivalent to an agreement or promise to become liable as lessees, or as indemnitors of the original lessee.

*New York General Term, March,* 1862.

INGRAHAM, LEONARD and CLERKE, *Justices.*

### Statement of facts by the appellant.

I.. THIS was an action in equity brought for the purpose of compelling the defendant to pay the rents reserved in a lease, and to perform all the lessee's covenants. Judgment was given for the plaintiff on a trial without jury at special term before Mr. Justice DAVIES, May 30, 1859. Exceptions were taken by the defendant; and, having made a case, the defendant appealed to the general term July 2, 1859.

II. On the 1st of January, 1853, the privilege of constructing the Third Avenue railroad was granted to sundry persons. The grantees formed a joint-stock association or partnership under the name of the Third Avenue Railroad Company, with a capital of $400,000. By art. 16, it was provided that "the members * * * may * * incorporate themselves under the general railroad act whenever two-thirds in interest shall require." (*Fol.* 108.) By articles dated Oct. 6, verified Oct. 7, and recorded Oct. 8, 1853, the individuals who, at this latter period, were members of the partnership formed themselves into a corporation for the purpose of constructing, &c. said railroad under the same name, with a capital of $1,170,000. (*Fol.* 205 *to* 219, 112.)

Several of the persons who were grantees of the privilege and members of the copartnership had in the interim withdrawn from the enterprise, and did not become members of the corporation. Myndert Van Schaick, the plaintiff in this action, was one of those who so withdrew.

III. The lease in question was dated August 16, 1853. The plaintiff, Myndert Van Schaick, thereby demised to Henry Van Schaick for fifteen years, from June 9, 1853, at a rent of $3,000 per annum, half a block of land front-

ing on Third and Fourth avenues and Sixty-first street, the lessee to pay all taxes and assessments.

Henry Van Schaick and P. Reynolds, president of the partnership, subscribed and sealed an instrument, dated August 17, 1853, purporting to be between H. Van Schaick of the first part, and the partnership of the second part, whereby it was acknowledged that H. Van Schaick took the lease in trust for the partnership " and such company as might be thereafter formed to succeed them in their said business." It contained the following provisions :

" The said parties of the second part do hereby agree with the said parties of the first part that they and the said company will assume, and they hereby do assume, all the covenants in said lease by him (said Henry Van Schaick) agreed to be performed therein." Philip Reynolds, a witness for the plaintiff, gave some evidence that the understanding set out in this paper did exist on the part of the partnership.

On October 8, 1853, the then existing members of said partnership, amongst whom was Henry Van Schaick, for the consideration of $1,170,000, by deed of assignment of that date, as parties of the first part, conveyed to the then newly created corporation the said railroad grant, " and also the railroad, with all the cars, horses, omnibuses, sleighs, harness, leases, stage licenses, and all / other property and appurtenances belonging to the said ' partnership or firm, and to the said parties of the first part, as members of said company, or interested in said grant, and in the capital and property of said company," (except certain specified real and leasehold estate,) " subject to all the terms, conditions, stipulations and provisions in said (railroad) grant mentioned, and by which the said parties thereto of the second part are bound ; and " (it was further thereby agreed that) " the said parties of the second part hereto, by these presents, accept the sale, assignment and transfer of said grant,

railroad and other property hereby conveyed, or intended to be conveyed, subject as aforesaid."

This instrument contains a special covenant that the corporation will pay rents on a certain lease included in the assigned property, and keep, pay and perform sundry other specified engagements and liabilities of the assignors connected with the assigned property; but it contains no allusion to the lease now in question, nor is that lease in any way referred to. The said Philip Reynolds testified that "the existence of the lease in question was well known to, and was frequently a subject of conversation among those interested in the partnership property and by the directors of the corporation at its creation, and that it was held in trust by Henry Van Schaick for the corporation, until assigned by him, as it had been before held by him for the partnership," and that the corporation went into possession of the demised premises on October 9, 1853.

This witness further stated that some time in November, 1853, Henry Van Schaick, by an order or resolution of the directors, (not produced,) assigned the lease to the corporation. This assignment was produced; it bore date November 7, 1853, was sealed by Henry Van Schaick only, and contained no express promise or undertaking on the part of the corporation; it contained, however, a covenant by H. Van Schaick against incumbrances, and the usual words, " subject nevertheless to the rents, covenants, conditions and provisions therein also contained."

The corporation paid rent and all assessments, &c., according to the lease until Feb. 1, 1858. Prior to that date, in January, 1858, the lease and term were sold and assigned by the corporation to Samuel Searles for $5. He was a man of small means.

IV. Reynolds, the witness, and H. Van Schaick the lessee, were in copartnership, as attorneys at law. During all the transactions prior to the date of the assignment

of the lease to the corporation, H. Van Schaick was coun-sel first for the partnership and then for the corporation. Reynolds was throughout the same period president and treasurer of these railroad companies.

There was a total change of administration in the de-fendant's company at the November election, 1854. The paper purporting to have been executed between H. Van Schaick and the partnership, per Reynolds, in August, 1853, was first received by the corporation in May, 1856. It was then transmitted to the president with a letter from Reynolds.

V. When the Central Park was opened, a portion of the demised premises was taken for that public purpose. From the short statement of this matter given in the case, the following facts appear : The sum of $241 was awarded for the land so taken. The plaintiff wrote a letter to one of his friends, presenting as a problem how much of this ought to go to a tenant having a fifteen year lease, who answered that $51.21-100 was the tenant's proportion; and after sending this solution, with a grum-bling postscript, to the president of the corporation, the plaintiff, on August 18, 1854, paid this sum to the trea-surer of the corporation. The effect of thus taking a part of demised premises is declared by law to be such that " all contracts and engagements respecting the same * * between landlord and tenant, or any other contracting parties, * * shall * * cease, determine and be abso-lutely discharged, as to the part thereof so taken, but shall remain valid and obligatory as to the residue there-of; and the rents, considerations and payments reserved or payable, and to be paid, for or in respect to the same, shall be so apportioned as that the part thereof justly and equitably payable, or that ought to be paid, for such said residue thereof and no more, shall be demanded, or paid or recoverable, for or in respect of the same." ( *Central Park act, Laws* 1853, 1163, § 2 ; 2 *R. L.*, 1813, 417, § 181.)

VI. There was no proof or allegation drawing in question the solvency of H. Van Schaick.

VII. The original complaint February 27, 1857, was founded mainly on a refusal by the corporation to pay an assessment which had been charged upon the property. This assessment was subsequently paid, as well as all accruing rents to and including Feb. 1, 1858; but the sale and assignment to Searles having taken place pending the action, the merits of that transaction were brought before the court by supplemental complaint, and answer in June and July, 1858.

The *only question* in dispute between the parties at the trial was, whether the assignment to Searles relieved the corporation from their relation to the plaintiff as assignees of the term, or, in other words, whether the corporation could be charged in equity as lessees.

The judgment is for the rent accruing on and subsequent to May 1, 1858, with $386 costs. And it adjudges " that the lease was made with H. Van Schaick on account and for the benefit of and as trustee for the partnership; that by the instrument bearing his and Reynolds' signature, dated August, 1853, the partnership, in pursuance of the previous agreement with H. Van Schaick, assumed all the duties and covenants on the part of the lessee; that by the assignment of the partnership to the corporation, dated October 8, 1853, the defendant assumed the same position; and that the contract aforesaid between H. Van Schaick and the partnership became, on the incorporation of the defendant and its adoption of the same in manner aforesaid, the contract of the defendant. It further adjudges that the defendant is bound on behalf of H. Van Schaick to perform all the duties and covenants of the lessee, and that, in equity, the plaintiff is entitled to enforce the same against the defendant to the same extent as H. Van Schaick might have done."

CHARLES O'CONOR, *for appellant.*

I. As mere assignees of the term granted to H. Van Schaick, it is clear that the assignment to Searles terminated the liability of the corporation. (*Walton* agt. *Cronly,* 14 *Wend.,* 64, 5 *Denio,* 460 ; *Taylor* agt. *Shum,* 1 *Bos. & P.,* 21 ; *Valliant* agt. *Dodemede,* 2 *Atk.,* 547 ; *Paul* agt. *Nurse,* 2 *Mann. & Ry.,* 525 ; *S. C., 8th B. & Cresw.,* 486 ; *Watkins on Conveyancing,* 519.)

II. The plaintiff has not made any case showing his claim to be any better in equity than it is at law.

1. As against the *partnership* there may be a *prima facie* case of liability at law *to Henry Van Schaick,* on the alleged original understanding between him and his associates in that partnership, or on the paper dated August, 1853, or both. But the plaintiff is a stranger to that contract. He could not sue on it at law, and he has no better right to sue on it in equity. (*Per Lord* MANSFIELD *in Chancellor* agt. *Poole,* 2 *Douglas,* 767, *app'd* ; 3 *M. & Scott,* 561 ; *Walters* agt. *Northern Coal Mining Co.,* 5 *De Gex, Mc-Naughten & Gordon,* p. 629 ; *Cox* agt. *Bishop,* 26 *Law Jour. Rep., part I, p.* 389.)

2. The pretext on which, as a short cut across lots, it has been attempted to sustain a bill in equity in favor of the lessor against the lessee's grantee, does not apply in this case. The original lessee is perfectly solvent, and, consequently, the legal remedy of the landlord is complete.

III. As against the present defendant, the plaintiff has not made out a *prima facie* claim either in favor of Henry Van Schaick or in favor of the partnership.

1. The assignment by Henry Van Schaick to the corporation, dated in November, 1853, is not so expressed as to raise by implication an engagement by the latter to indemnify the former from the covenants on his part contained in the lease. (*Steward* agt. *Wolveridge,* 3 *Moore &*

*Scott*, 561 ; *S. C.*, 1 *Crompt. & Mees.*, 644 ; *Belmont* agt. *Coman, in Court of Appeals, Mss.*, 1861 ; 22 *N. Y. R.*, 440 ; *Humble* agt. *Langston*, 7 *Meeson & W.*, 530.)

2. So long as the corporation continued in possession and sustained the character of assignee of the term, the corporation was liable for the rent to the lessor, and if there had been any failure to pay, and Henry Van Schaick had been compelled to pay, he might have maintained an action for the injury. But that is not the present case. During all the time that the corporation remained in possession, or continued to be assignees, the rent was paid. (*Burnett* agt. *Lynch*, 5 *B. & Cr.*, 589, *as explained in Wolveridge* agt. *Steward*, 3 *Moore & Scott*, 561.)

3. Even if it could be maintained that the term in question passed to the corporation by virtue of the assignment of assets executed by the partnership in October, 1853, which is not the fact, neither a covenant nor a promise could be implied on the part of the corporation to indemnify the partnership as to the rents in *this* lease. All the liabilities of the partnership which the corporation assumed in that transaction, are expressly named and specified in the assignment. *Expressio unius exclusio est alterius.*

IV. Even if the circumstances in evidence, taken by themselves and without reference to others which may exist but are not proven, raise a presumption that the present defendant is bound to indemnify the partnership or Henry Van Schaick, or both, against the rents now in arrear and hereafter to become due, no right of action would thence accrue in favor of this plaintiff against the present defendant.

1. The present plaintiff as lessor has, against the parties he bargained with, all the remedies he bargained for. These remedies are adequate to all the ends of justice. (*See cases cited under second point.*)

2. If the present defendant ever incurred any obliga-

tion to Henry Van Schaick and the partnership, its lia-
bility thereon must be enforced BY those parties. A release
from *them* ; a counterclaim against *them*, and many other
answers against *them* may exist which cannot be availa-
ble against the plaintiff. There is no principle of law
which will allow a creditor to pass by *his* own debtor
and seek satisfaction of his demand by suit against his
debtor's debtor. Such a course might sometimes afford a
short cut to justice, but if allowed it would always pro-
duce much confusion and would often produce rank in-
justice.

V. The judgment of the special term should be reversed
and a new trial awarded.

Wм. Curtis Noyes, *for respondent.*

I. The agreement of 17th August, 1853, declares that
Henry Van Schaick has taken the lease " solely for the
benefit of the party of the second part (the unincorpo-
rated railroad association) and of such other company as
may be hereafter formed to succeed them in their belief
of holding and running a railroad through the Third ave-
nue," &c. (*Case, fol.* 13 *to* 17, *and resolutions and proceed-
ings put in evidence by plaintiff, case, fol.* 73 *to* 89.)

The resolution of the same date, given in evidence, and
which authorized the making of that agreement, contains
this clause, (after declaring that it was expedient that
the lease should be made to Henry Van Schaick:) " To
be held by him for the benefit of this company or such
other company as may be hereafter formed," &c., and
then declares that the president was thereby authorized
to enter into an agreement with said Henry Van Schaick
" that this company and such other company as may be
hereafter formed in its stead, as above, will and do assume
the performance of all covenants contained in said lease,
which are by said Henry Van Schaick therein agreed to
be performed," on condition of his agreeing with the com-

pany " that he will at any time hereafter assign said lease to said company or such other company as shall be formed," &c.

The agreement then provides that Henry Van Schaick will assign the lease to that company " or the company hereafter to be formed," &c., and the " said parties of the second part then agree that they and the said company will assume, and they hereby do assume, the performance of all the covenants in said lease by him agreed to be performed therein." (*Case, fol.* 13 *to* 17.)

II. This agreement and the lease constituted a lease of the premises to the two companies, and created Henry Van Schaick the trustee of the unincorporated association, and the defendants the new company, of the lease, and the terms in the premises described in it; and, as between him and them, each of those companies was the beneficial owner of the premises for the term, and liable, primarily, to pay the rent, and to perform the other cove nants of the lease; and Henry Van Schaick, having, in form, bound himself by the lease to pay the rent, was a mere surety for the companies, and entitled to indemnity in case he should himself be compelled to pay it. (*Staines* agt. *Morris,* 1 *V. & B.,* 8, 11; *Pencher* agt. *Mathers,* 1 *Bro., C.* 52; *Wilkins* agt. *Fry,* 1 *Meriv.,* 244, 262–3.)

III. If they refused to pay, and he was about being sued for payment, he could, by an action for a specific perform- ance of his agreement, compel the companies to assume the primary liability for the rent, so as to protect him- self, and prevent a multiplicity of suits. It is obvious that he was to hold for them, and only until a legal com- pany could be formed to take the title. These principles admit of no dispute.

IV. It is equally clear, that if Henry Van Schaick had refused to assign to the defendants, the new company, provided for and anticipated in the resolution and agree- ment of 17th August, 1853, upon its formation and upon

request, he could have been compelled, by action on its part for a specific performance, to do so, they offering to indemnify him, as above suggested. The rule is, that an agreement made for the benefit of a legal person, whether actually in being or thereafter to be created or constituted, may be adopted and enforced by him, whenever his legal capacity exists and his interest attaches. It is upon this principle that agreements to take stock in inchoate companies or corporations are enforced as soon as the company or corporation legally exists. (*Shepherd* agt. *McEvers*, 4 *John. Ch. R.*, 136 ; *Townshend* agt. *Goeway*, 19 *Wend.*, 524 ; *Lake Ontario Railroad Co.* agt. *Mason*, 16 *N. Y. R.*, 451 ; *A. & A. on Corp.*, 5th ed., § 523.)

V. In pursuance, then, of these rights, and according to those obligations, Henry Van Schaick actually assigned ·the lease to the defendants, the new company, on the 7th November, 1853, (*case, fols.* 32, 155 *to* 159,) at their request, and they thereby become the actual legal owners of the term, and liable to pay the rent and perform the other covenants of the lease. In other words, by successive steps they become the legal lessees, as they were before the equitable lessees, with the same effect as if they had taken the lease to themselves originally ; that being the position they originally contemplated, and in which they thus placed themselves ; and the assignment declares that it was taken " subject to the rents, covenants, conditions and provisions therein mentioned," which is, in legal effect, a further agreement with Henry Van Schaick, and with the plaintiff, that the rents shall be paid by the defendants as original lessees.

VI. The defendants stand, therefore, in the position of lessees of the plaintiff, not only because the intention of all the parties was to make them such, but because they had actually become such, this Henry Van Schaick being a mere conduit to carry the term in the lease to them. As such, therefore, they are liable for the rest,

having, in addition, agreed to indemnify Henry Van Schaick against its payment. It was only as such, that they received their interest for the whole term in the ground taken for public purposes, according to the report dated 18th May, 1854; and this conclusively proves they were lessees and not assignees, and is conclusive against the defendants, whose officers received it. (*Case*, 6, *fol.* 161 *to* 164.)

VII. Again, as Henry Van Schaick was a mere surety for the defendants, and is himself liable for the rent to the plaintiff, and under his agreement with the defendants, and by the clause in the lease already referred to, may look to them for indemnity, the plaintiff being the creditor, may compel the defendants who are liable, confessedly to Henry Van Schaick, to pay directly to him, upon well settled principles of equity. (*Curtis* agt. *Tyler*, 9 *Paige*, 432.)

The substance of this rule of equity is, that a creditor to whom a debt is due, has the right to appropriate to himself all the remedies which his debtor has, for the debt so due him, especially where such debtor is a mere surety. This was the condition of Henry Van Schaick, and he had, contemporaneously with the incurring of his obligation, taken the very obligation the plaintiff here seeks to avail himself of, for his own protection. That obligation is, therefore, available to him within the case cited and the rule laid down in it.

VIII. It follows from these facts and principles—

1. That the defendants contracted with the plaintiff, through Henry Van Schaick.

2. That they impliedly as well as expressly agreed to pay the rent, to assume the position of lessees, and to indemnify Henry Van Schaick.

3. That the contract originally made between the company-while unincorporated, and Henry Van Schaick and the plaintiff, was legally and equitably made with the de-

fendants when incorporated, and that they adopted it, and availed themselves of its benefits, &c.

4. That being theirs for benefits, it must also be theirs for burdens, and especially to the extent of indemnifying Henry Van Schaick and the plaintiff, his creditor.

5. That in equity the claim of Henry Van Schaick to indemnity is the property of the plaintiff, and may be exerted by him to the extent of collecting his rent, &c.

6. That the defendants had notice of all the agreements and resolutions out of which the equity of the plaintiff and the rights of Henry Van Schaick arose, and are bound by what they contain.

7. That there is a direct privity of contract between the plaintiff and defendants, and especially with and through Henry Van Schaick, he having made the agreement and taken the lease for them and for their benefit, and they having agreed to protect and indemnify him as the covenantor and debtor of the plaintiff.

8. That the attempt of the defendants to get rid of their liability by assignment, was futile, a violation of duty to the plaintiff and Henry Van Schaick, and that they remain liable, exactly as they were before.

IX. The plaintiff was therefore entitled to the relief prayed, in so far as it has not been performed. The plaintiff did not ask any judgment as to the Central Park assessment, that having been paid after suit brought; but as to all the rest, the plaintiff was entitled to specific performance of the agreement based upon the equities of Henry Van Schaick and the plaintiff, so as to require the defendants to occupy their true position as lessees. This included the assessment given in evidence, imposed before defendants assigned, and about which no question is made, and the payment of which was also properly provided for.

The judgment was, therefore, right, and should be affirmed, with costs.

By the court, LEONARD, Justice. The liability of the defendants for rent ceased, at law, when they assigned the lease and terminated their occupation. Nor can the defendants be held for the rent, in equity, as *cestui que trusts*. (*Walters* agt. *The Northern Coal M. Co.*, 5 *De Gex., M. & G.*, 640 *to* 642.)

Had there been any previous agreement between the landlord and the defendants for taking a lease in the name of a trustee for the use or benefit of the defendants, the case might have been different, under the authority just referred to. But no agreement or liability could have existed between the landlord and the defendants prior to or at the time of making the lease in question, because the defendants were not incorporated till several months afterwards.

The knowledge of the directors of the incorporation, or some of them, that the lease had been taken by the lessee some months before they became incorporated, for the benefit of or in trust for such corporation thereafter to be formed, was not sufficient to create any liability on the part of the defendants, (the corporation,) legal or equitable.

If the individuals composing the corporation were the same as those composing the association for whom the lease was taken, the plaintiff's action would nevertheless fail, without some act on the part of the defendants that could be deemed equivalent to an agreement or promise to become liable as lessees, or as indemnitors of the lessee named in the lease.

The act of receiving an assignment of the lease, subject to the rents, &c., although an agreement existed between the lessee and certain individuals who previously owned the railroad, declaring that the lease had been taken by the lessee in trust for the defendants when thereafter incorporated, devolved no extraordinary or equitable liability on the defendants.

The receipt of the lease by assignment, in the absence of any resolution or agreement to incur or undertake other liability, involved only the usual legal liability in such cases on the part of the defendants.

By the agreement referred to between the lessee and the former owners of the railroad, the lease was to be assigned to the defendants when incorporated, only on request, by virtue of a resolution. I think it may be stated that a resolution of that character was never adopted. True, Mr. Reynolds testifies that the lease was assigned to the defendants by their order or resolution, but on examining the records immediately afterwards, he admits that he cannot find it, as he understood it to have been passed. No further evidence being given on the subject, it is fairly inferable that Mr. Reynolds recedes from his first statement.

There is no evidence to sustain a contract, express or implied, either as between the plaintiff and the defendants, or as between the defendants and the lessee named in the lease.

The judgment is reversed, and new trial ordered; costs to abide the event.

INGRAHAM, J. I concur in the above judgment, upon the ground that the defendants were not in existence at the time the lease was executed, and cannot, therefore, be made liable for the covenants in the lease without some act accepting the lease as made for their benefit. This may be either directly, by resolution, adopting the liability as the *cestui que trust*, or by a course of conduct that would warrant the court in finding that they had, by such conduct, given their assent to the same, and adopted it as made for their benefit. The evidence will not warrant either conclusion, as the case now stands. The defendants are nothing more than the assignees of the lease, and their liability only extends to the period during which

they held the lease, and ceased with their relinquishment of interest therein. It may be, on a new trial other facts may be shown to change the relation of the defendants with the lessee.

Judgment should be reversed, and a new trial ordered.

*Dissenting opinion.*

CLERKE, J. It is beyond dispute that Henry Van Schaick was the mere trustee of the unincorporated company in receiving this lease, who were, in fact, though not technically, according to the common law, the original lessees of the term. It is also clear that this company, at the time this lease was taken for their benefit, contemplated becoming an incorporation—their condition then being merely preparatory to the ultimate design, (*see articles* 8 *and* 15 *of the association.*) They agreed, while unincorporated, that they and the company thereafter to be formed (meaning the incorporation) would assume, and thereby the association did assume, the performance of all the covenants in the lease. The intentions indicated by all the arrangements made, and the provisions in the articles of association, manifest an intention of making the incorporation, in all respects, identical with the association. It had the same object, the same business, the same plan of operation, the same property, and the same liabilities. It had the same members generally, although some of the members of the association did not become members of the incorporation; but this change of members would not have affected the identity of the former, as in the case of an ordinary copartnership. According to article eight of the articles of association, it is expressly provided " that the company shall not be dissolved by the death or act of any member, but his successor or successors in interest shall stand in his place." The incorporated company, then, is as much the same body in fact, as if the association had continued unincorporated.

The incorporation under the general law was resolved upon merely for the convenience of business and the protection of its members from unlimited liability—not for the purpose of adopting a new character, and changing its relations to those with whom it had previously entered into engagements or transacted business. Any attempt now upon the part of the corporation to get rid of the liabilities of the association on the technical ground that it is a different person in law—one artificial person instead of many natural persons—is just such an attempt as a court of equity, regarding all the circumstances, should intervene to defeat and prevent. It will deal only with the substance and real facts of the case, and forbid the employment of a technical rule, and, I may say, a metaphysical conception, to work palpable injustice. It is eminently a case for the interference of a court of equity. When we also consider the testimony of Reynolds, the president of the association, and also of the same body in its incorporative state, it is apparent that the incorporation recognized this lease as taken for their benefit, and that it was held in trust by H. Van Schaick for them. To be sure, he says he could not find the resolution by which the lease was accepted; but it was accepted, and used by them; they continuing in occupation of the premises precisely in the same manner as the company. I agree, therefore, with the justice who presided at the special term, in saying that the defendants are the real owners of the lease, and that H. Van Schaick held it for their benefit.

The case comes within the principle stated by the Lord Chancellor in *Walters* agt. *Northern Coal Mining Co.*, (5 *De Gex., McNaughton & Gordon, p.* 629,) that if there was a previous contract between the *cestui que trust* and the landlord, that they should accept and he should grant the lease, the landlord would be entitled to the relief sought.

The judgment should be affirmed, with costs.